UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.     : | Criminal Number: 06-157 (RJL) |
| : | |
| FAHEEM MOUSA SALAM,     : | |
| : | |
| Defendant.     : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorneys, G. Bradley Weinsheimer and Stacey K. Luck, respectfully submit this Memorandum in Aid of Sentencing. For the reasons set forth below and further explained in the government's 5K1.1 Motion, the government respectfully recommends that the Court sentence defendant to a sentence consistent with a two level downward departure from the applicable guidelines range, from an offense level of 21 to an offense level of 19, with an imprisonment range of 30 to 37 months. Further, the government recommends a sentence of incarceration at the low end of that guideline range, 30 months.

I.   BACKGROUND

   A.   The Violation

On August 4, 2006, Salam entered a guilty plea to a one-count Information charging him with violating the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2. As set forth in the signed Statement of Offense, from on or about October 16, 2004 until on or about March 24, 2006, Salam was employed as a translator by a United States government contractor and lived in Iraq. From a date unknown, but beginning at least by on or about December 12, 2005, and continuing until on or about March 24, 2006, Salam engaged in business transactions in Iraq with individuals unrelated to his employment as a translator. On or

1

.
.

about December 12, 2005, Salam met with and offered a senior Iraqi official with the Iraqi Police, the Iraqi Border Guard, and the Iraqi Special Police (collectively referred to as the "Iraqi Police Force") a $60,000 "gift" if the Iraqi official would arrange for the Iraqi Police Force to purchase from the defendant a large-scale map printer and 1,000 armored vests. The defendant suggested the total cost for the proposed transaction would be $1,090,000 ($90,000 for the printer and $1,000 for each of the vests). The defendant understood that the materials requisitioned by the Iraqi Police Force would be acquired on its behalf by the Civilian Police Assistance Training Team (hereinafter, "CPATT"), a U.S.-led multinational organization responsible for purchasing materials for the Iraqi Police Force.

On or about January 2, 2006, in an effort to secure the contract, Salam contacted the Iraqi official by telephone and offered to reduce the total cost of the armored vests to $800,000 (i.e., $800 for each vest). The defendant added that as a result of the reduction in the cost of the vests, his "gift" to the Iraqi official would be reduced to $50,000.

On or about January 3, 2006, Salam again spoke with the Iraqi official regarding the proposed contract and "gift." With the consent of the Iraqi official, the telephone conversation between the official and Salam was monitored and tape recorded by United States law enforcement officials from the Office of the Special Inspector General for Iraq Reconstruction (SIGIR). During the conversation, Salam again requested that the Iraqi official arrange for the purchase of the large-scale map printer and the armored vests. In an attempt to finalize the transaction, Salam suggested he could further reduce the price of the vests and similarly reduced his proposed "gift" to the Iraqi official to $30,000.

Thereafter, on or about February 6, 2006, Salam met with a United States law enforcement officer from SIGIR who was posing as a procurement officer for CPATT. At the time, it was Salam's understanding that the SIGIR agent would be able to facilitate the transaction the defendant had previously proposed to the Iraqi official. During the conversation, the defendant offered the SIGIR agent $28,000 to $35,000 to process the contract for the map printer and the armored vests. Soon thereafter, on or about February 16, 2006, Salam abruptly terminated the proposed contract.

### B.    Post-Arrest Assistance and Acceptance of Responsibility

Following the meeting with the undercover SIGIR agent, Salam returned to the United States at the request of his employer. On or about March 24, 2006, defendant Salam was placed under arrest by SIGIR agents while he was at Dulles International Airport located in Dulles, Virginia. Within twenty-four hours, Salam met with law enforcement officials, admitted his involvement in the offer to bribe the Iraqi official, and identified other individuals involved in the proposed sale of the armored vests and the map printer. Salam has remained cooperative in the investigation, entered a pre-indictment plea agreement, and has fulfilled the terms of his plea agreement.

As part of his plea agreement, Salam agreed to meet with government investigators on several occasions. Over the past ten (10) months, Salam has explained his involvement in offering bribes in Iraq to government officials and provided additional information regarding individuals involved in the instant matter. Salam also indicated his willingness to assist law enforcement officials in the investigation of corruption in Iraq; however, those efforts ended when Salam's co-workers and other individuals in Iraq learned of his arrest thereby preventing

Salam from being able to act covertly on behalf of the government.  Since Salam's arrest, additional individuals have not been charged in the matter thus far due to circumstances beyond Salam's control. Nevertheless, Salam's assistance has been useful, appears to be reliable and credible based upon corroborating evidence, and was timely provided by the defendant during the course of the government's investigation.

**II.     SENTENCING STANDARDS**

Pursuant to United States v. Booker, 125 S. Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory.  In Booker, the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004), and consequently invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 764.  Subsequently, courts have noted that "Booker requires judges to engage in a two-step analysis to determine a reasonable sentence." United States v. Doe, 412 F. Supp.2d. 87, 90 (D.D.C. 2006).   This process has been described as follows:

> [A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

Id. (quoting United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005)).  As for the second step of the Booker sentencing analysis, the court in imposing sentence must as well consider the other factors of Section 3553(a).  United States v. Price, 409 F.3d 436, 442 (D.C. Cir. 2005).  Section 3553(a) factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the range established for the conduct under the Guidelines;

5. the policies promulgated by the Sentencing Commission;

6. the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

### III. SENTENCING CALCULATION

The government has no objection to the sentencing guidelines calculation presented in the Presentence Investigation Report. The calculation is based upon the 2006 United States Sentencing Guidelines Manual and is as follows:

| | |
|---|---|
| **Base Offense Level**<br>USSG § 2C1.1(a)(2) | 12 |
| **Specific Offense Characteristic**<br>Offense involved intention to provide<br>more than one bribe<br>USSG § 2C1.1(b)(1) | 2 |
| **Specific Offense Characteristic**<br>Value of bribe more than $30,000<br>And less than $70,000. | 6 |
| **Specific Offense Characteristic**<br>Offense involves of a public official in a | 4 |

|  |  |
|---|---|
| high-level decision-making or sensitive position) | |
| Total | 24 |
| **Acceptance of Responsibility** USSG § 3E1.1.(a) | (-3) |
| **FINAL ADJUSTED OFFENSE LEVEL** | 21 |

See PSR, at ¶¶ 26-38. This calculation also is consistent with the calculation agreed to by the parties in the plea agreement. In making its recommendation, the government is mindful that defendant Salam entered an early plea, assisted in the investigation, accepted responsibility for his conduct, and has shown remorse. Because of these circumstances, the government agrees that it is appropriate for defendant Salam to receive the three level reduction in offense level for acceptance of responsibility. This reduction already has been calculated in the final offense level of 21.

Based upon a guideline offense level of 21 and the defendant's criminal history category of I, the applicable imprisonment range is 37 to 46 months. See PSR at ¶ 65.

## IV.  SENTENCING RECOMMENDATION

Taking into consideration the nature and seriousness of the offense, the policies of the sentencing guidelines, the defendant's substantial assistance, and being mindful of the need to fashion a sentence which promotes deterrence and a just punishment, the government recommends a two level departure from the applicable guidelines offense level of 21 to a guidelines offense level of 19 with an imprisonment range of 30 to 37 months. Further, the government recommends a sentence of incarceration at the low end of the guidelines. Applying

the factors of 18 U.S.C., § 3553(a), we believe this would be both an appropriate and reasonable sentence.

### A. Evaluation of the 3553(a) Factors

1. Nature, circumstances and seriousness of the offense.

The sentence imposed by the court should reflect the nature, circumstances and seriousness of the offense. 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A). The nature and seriousness of the instant offense is significant – an attempt to bribe a senior Iraqi official to obtain a contract to sell armored vests and a map printer during a time of war.  As an employee of a United States government contractor who held a security clearance, the defendant should have realized the error in the choice he made to potentially undermine the integrity and operations of the Iraqi government and U.S. military operations by attempting to bribe a senior Iraqi Police Force official.

2. History and characteristics of the defendant.

The sentence imposed by the Court should reflect the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).  Despite the defendant's serious and potentially dangerous conduct, Salam's criminal history evinces no prior criminal proclivities.  In addition, subsequent to his arrest, Salam immediately accepted responsibility for his actions, agreed to cooperate with government officials, abided by all of the terms of his pre-trial release, met with law enforcement officials on numerous occasions, and provided detailed information regarding other individuals involved in the proposed sale to the Iraqi official.

3.  Deterrence.

In determining the sentence in this case, the Court should also consider the importance of imposing a sentence that affords adequate deterrence. 18 U.S.C. § 3553 (a)(2)(B).  The need for deterrence in FCPA cases is important as the laws are intended to combat a culture of corruption that could otherwise undercut the development and good governance of nations around the world. As in the present matter, FCPA cases are typically very difficult to investigate and prosecute because documents and witnesses are located outside the United States' jurisdiction. The most effective deterrent for the type of crime committed by Salam is imprisonment. Unlike a fine, which may be paid and considered a mere cost of doing business oversees, incarceration provides a just punishment for the offense.

Those who engage in the type of bribery scheme in which Salam participated must realize that punishment in the form of incarceration will be meted out once their illegal activities are uncovered.  This is not a case where just one bribe was offered nor where the amounts offered were small.  Defendant Salam offered bribes on several occasions to finalize the contract and offered substantial amounts of money to the Iraqi official, and then to the SIGIR agent, each time.  A sentence below the otherwise applicable guideline range including a period of incarceration would account for defendant Salam's cooperation but also would send a strong message that those who engage in this sort of illegal activity should think twice, given the prospect of imprisonment.

4. Evaluation of the United States Sentencing Guidelines Policy

To the extent defendant Salam seeks a probationary sentence, such a sentence would be inappropriate in this case.  Section 3553(a) directs the Court to consider policies promulgated by

the Sentencing Commission. 18 U.S.C. § 3553(a)(5). To that end, the official commentary is of relevance in evaluating the sentencing guidelines policies. Under the Sentencing Guidelines, the defendant's sentencing range falls in Zone D of the Sentencing Table, which requires that "the minimum term. . . be satisfied by a sentence of imprisonment." U.S.S.G. Ch. 5, Pt. C1.1(f). The official commentary to this section states that when the sentencing guideline range is in Zone D, imprisonment substitutes (such as probation or community service) are not appropriate. See U.S.S.G. Ch. 5, Pt. C1.1(f), comment. 8. The departure recommended by the United States in this case, pursuant to U.S.S.G. §5k1.1, appropriately balances defendant's cooperation with the need for just punishment and deterrence.

V.    **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that the Court sentence defendant Salam to a sentence consistent with a downward departure of two levels from the applicable guidelines calculations from an offense level of 21 to an offense level of 19, with an imprisonment range of 30 to 37 months. Further, the government recommends a sentence of incarceration at the low end of that guideline range, 30 months.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        District of Columbia

        STEVEN A. TYRRELL
        Acting Chief, Fraud Section
        Criminal Division, U.S. Department of Justice

        MARK F. MENDELSOHN
        Deputy Chief, Fraud Section
        Criminal Division, U.S. Department of Justice

By:    _____/s/_____
        G. BRADLEY WEINSHEIMER
        Assistant United States Attorney
        United States Attorney's Office
        555 4th Street, N.W., Room 5237
        Washington, D.C. 20530
        Bar Number 431796
        (202) 514-6991

        STACEY K. LUCK
        Trial Attorney, Fraud Section
        Criminal Division, U.S. Department of Justice

        950 Pennsylvania Avenue
        Washington, D.C. 20530
        Phone: (202) 514-4018
        Facsimile: (202) 514-0152