IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>FAHEEM M. SALAM, )<br>)<br>Defendant. )<br>_____ ) | Criminal No. 06-157 (RJL) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Faheem Salam, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.  Mr. Salam pled guilty and awaits sentencing for violating the Foreign Corrupt Practices Act in violation 15 U.S.C. § 78dd-2(I) and (g)(2)(a).  Based on all the sentencing factors in this case, Mr. Salam respectfully asks the Court to sentence him to a period of probation, the first twelve months of which to be served on electronic monitoring.

### DISCUSSION

Faheem Salam is 29 years old.  He was born in Jerusalem, Israel and grew up in Palestine with both parents, seven brothers, and two sisters.  Though Mr. Salam describes life in Palestine as filled with struggle, his parents instilled in him and his siblings a sense of pride and a strong work ethic.  All of his siblings graduated from secondary school, and most of them have continued to receive university degrees.  Mr. Salam is likewise a high school graduate, has an associate degree, and is currently enrolled in the University of Michigan.

In 1996, Mr. Salam was granted residency in the United States.  He traveled here alone to

live with one of his brothers who already lived in Michigan.  In 2002, Mr. Salam became naturalized as a United States citizen.   Having grown up in an environment in which many people of his community had no political voice, he became deeply interested in, and committed to American principles of democracy.  In 2003 he became an interpreter for U.S. armed forces in Iraq.  As the many letters written on his behalf reflect, he was held in high regard by the service members with whom he worked.  See Ex. A, Letters of colleagues attached collectively.

While in Iraq, Mr. Salam encountered many dangerous situations.  As he explains in his letter to the Court, none of the situations he faced in Iraq has approximated the distress his actions have caused him through his involvement in the criminal justice system.  See Ex. B, Letter of Faheem Salam.  Mr. Salam made a terrible mistake in December 2005 when he attempted to bribe an Iraqi official to facilitate the purchase of a map printer and armored vests for use by Iraqi security forces.  Although Mr. Salam withdrew from the transaction before it was finalized, he was wrong in his initial attempt to broker the transaction.  At the time, Mr. Salam remained unaware of how wrong his actions were.  He remained in Iraq continuing his duties without incident through March 2006 when he left to return to the United States for home leave.

Upon his arrival in the United States, Mr. Salam was immediately arrested.  On the day of his arrest, Mr. Salam agreed to meet with U.S. government officials, and did so late into the night to detail his offense and to provide all that was asked of him.  To his disappointment, Mr. Salam never returned to Iraq and there exists no prospect of him doing so in the future.[1]

Prior to his arrest in the instant case, Mr. Salam had never had any contact with the

---

[1] Mr. Salam has been barred from all executive branch service, contracting, and employment.

criminal justice system. To his family, friends, and colleagues, he had succeeded against odds that seemed insurmountable to become a positive example of success for those who apply themselves. As the many letters reflect, this crime represents a marked deviation from an otherwise law abiding life.

The sentencing guidelines recommend a sentence of 37-46 months. Any discusssion of the guidelines, however, should consider section 5K2.20, concerning aberrant conduct. This section is instructive in analyzing what sentence Mr. Salam should receive.[2]

Under § 5K2.20, a sentence below the applicable guideline range is appropriate where a defendant's criminal conduct constitutes "aberrant behavior." Section 5K2.20 lists five factors that would preclude such a departure. None of these factors apply to Mr. Salam: (1) there was no serious bodily injury; (2) no firearm was used; (3) his instant offense is not a serious drug trafficking offense; (4) he does not have any criminal history points; and (5) he has no prior felony convictions.

Application Note 1 to U.S.S.G. § 5K2.20 defines "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." Over the course of the past year, Mr. Salam has met with the government and forthrightly explained how he came to be involved in this offense. He has detailed the scope of the offense and his actions. There is nothing particularly complex about

---

[2] Although § 5K2.20 concerns a departure under the sentencing guidelines, the factors identified under this section also concern factors for consideration under 18 U.S.C. § 3553. As such, Mr. Salam discusses § 5K2.20 for support that a reasonable sentence would be one of time served or probation with a condition that substitutes electronic monitoring for imprisonment.

the transaction through which Mr. Salam initiated a bribe. It was a straightforward offer of a "gift" to an official in exchange for the purchase of equipment for the Iraqi security forces. The parties negotiated a price for the equipment downward and the bribe was reduced in proportion to this price. The attempted transaction required no significant planning. It was not a transaction or series of transactions that spanned a lengthy period of time. Mr. Salam's conduct was clearly defined in scope and clearly confined in duration. It was also an offense that was a marked deviation from an otherwise law-abiding life for Mr. Salam.

When Mr. Salam was approached by law enforcement, he did not hide his offense. Rather, he admitted to his wrongdoing and eventually pled guilty in this matter pre-indictment. Prior to his conviction in the instant matter, Mr. Salam had no criminal convictions and had a spotless reputation. His conviction will cost him a great deal. A life in which Mr. Salam has seemed to make so many good decisions is now forever tarnished as a result of his single bad decision in this case. While he is depressed about the situation in which he finds himself, he is nevertheless hopeful that he can eventually move beyond his mistake and re-establish a career and life for himself. Mr. Salam urges the Court to give him the opportunity to show that the grave mistake he has made is inconsistent with his character and to impose a sentence that varies from the guidelines by substituting community confinement for incarceration.

In United States v. Booker, the Supreme Court directed sentencing courts to consider the factors set forth in 18 U.S.C. § 3553(a) in addition to consideration of any applicable sentencing guidelines. These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

4

guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a). Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

The Court should certainly consider that Mr. Salam's actions are a drastic deviation from an otherwise law-abiding life.

Mr. Salam recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and effectively provides the defendant with needed educational or vocational training and medical care. See 18 U.S.C. § 3553(a)(2). Balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." See 18 U.S.C. § 3553(a). A sentence that places Mr. Salam on community supervision and restricts him to home confinement would be more than adequate to meet the sentencing purposes set forth in § 3553(a)(2).

In assessing the seriousness of this offense under section 3553(a)(2), Mr. Salam asks the Court to note that there is no identifiable victim in this case because no entity suffered a loss as a result of Mr. Salam's actions. Mr. Salam recognizes that his actions were nevertheless wrong and that any bribery crime undermines the integrity of government contracting practices. At the same time, Mr. Salam's crime did not involve the attempted sale of defective or subpar equipment for an exorbitant price. Also, Mr. Salam did not seek to take advantage of someone in

a position of weakness. Nor did Mr. Salam possess a unique position from which he was able to exert any particular influence over the government official he approached. None of this is to excuse Mr. Salam, but to urge the Court to recognize his crime as a single unsophisticated act of bad judgement and not a complex scheme pathologically perpetrated.

Mr. Salam also urges the Court to note that his offense applies uniquely to American citizens. Foreign nationals would not be subject to prosecution under this law. The legislative history suggests that the offense was drafted to discourage corporate agents of American firms from paying bribes because such payments are concealed in corporate records, thereby undermining public confidence in corporate book keeping. See Foreign Corrupt Practices Act of 1977, S. Rep. No. 114, 95th Cong., 1st Sess. at 2-3, 4 (explaining need for law because public confidence in corporate integrity is undermined when corporations sanction bribery). The law also applies to any American citizen offering a bribe to a foreign official, presumably to prevent corporations from circumventing the law through third parties. Faheem Salam violated this law and offers no justification for his wrongdoing. However, his actions were not Congress's focus when it enacted this law, and they do not give rise to the corresponding corporate deceptions Congress sought to prevent.

The sentencing guidelines involving general fraud offenses apply to this offense and thereby recommend a sentence of imprisonment. The statutory penalty for this offense is a maximum of five years imprisonment. Though certainly significant to Mr. Salam, in the panoply of federal fraud felonies, a five year penalty suggests that even given the harm Congress sought to deter and punish, it did not seek to impose the severe sanctions typically reserved for other

fraud crimes.[3]

Indeed, many of the indirect consequences arising from the prosecution of this offense otherwise address sentencing considerations enumerated under 18 U.S.C. § 3553(a) in ways that they do not in other cases.  For example, the public humiliation and the loss of the ability to continue business in the environment where the crime occurs provide sanctions that do not exist in other cases.  Mr. Salam lost a career that he felt suited him.  He lost the ability to serve his country and to be part of an endeavor in which he believed.  He lost friends and colleagues who believed in him.  He lost the respect of people who had held him in high regard.  Most tragically, he lost respect for himself.

The personal toll taken by his violation of this law has certainly punished him severely and promoted in him an abiding respect for the law.  Though he would never run afoul of this law, or any law again, his removal from Iraq and his inability to secure employment abroad following his conviction in this case coupled with an otherwise untarnished personal history, certainly eliminates any concern that the public needs to be protected from Mr. Salam.  Moreover, because Mr. Salam's arrest and termination from service in Iraq were widely publicized, they provide a strong deterrent to anyone who might become involved in actions similar to Mr. Salam's, or who might not know of, or understand the Foreign Corrupt Practices Act.  In these regards, many of the factors of section 3552(a)(2) have impacted Mr. Salam without regard to the sentence that this Court will impose.  For these reasons, Mr. Salam requests

---

[3]  For example, 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § (Bank Fraud) each carry a maximum penalty of 30 years imprisonment; 18 U.S.C. § 1348 (Securities Fraud) carries a maximum penalty of 25 years imprisonment; and 18 U.S.C. § 201 (Bribery) carries a maximum penalty of 15 years.

that the Court consider a sentence that varies from the recommended sentencing guideline range.

Mr. Salam made a mistake. He has done everything within his power to right his mistake. He has assisted the government in every way he has been able. He has been unwavering in his acceptance of responsibility for his wrongdoing. While he recognizes that he must be punished, Mr. Salam asks that he be afforded the opportunity to prove to this Court that this single episode of poor judgment was truly an aberration.

It is within the bounds of this Court's discretion to fashion a sentence that will serve the needs of the public for Mr. Salam's punishment, but will also acknowledge that this is Mr. Salam's only conviction in his life, that he is capable of living productively, and that the non-judicial consequences of his actions have cost him more than any term of imprisonment could.

## CONCLUSION

For all of the foregoing reasons and such other reasons as may be discussed at the sentencing hearing in this matter, Mr. Salam respectfully requests the Court to consider as a governing rationale, "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant has not been convicted of a crime of violence or otherwise serious offense." Comment Note to 18 U.S.C. § 3551 (reciting legislative history of federal sentencing scheme).

Having committed acts of which he is ashamed, Mr. Salam seeks recognition that he is capable and prepared to live the rest of his years free of involvement with the criminal justice system. A sentence of probation with a condition that he serve the first twelve months on electronic monitoring would acknowledge that hope remains for Mr. Salam while at the same time serving society's interest in punishing him. Should the Court impose a sentence of incarceration, Mr. Salam requests that he be permitted to self-surrender.[4]

        Respectfully submitted,
        A.J. KRAMER
        FEDERAL PUBLIC DEFENDER

        /S/
        Tony Axam, Jr.
        Assistant Federal Public Defender
        625 Indiana Ave., N.W., Ste. 550
        Washington, D.C. 20004
        (202) 208-7500

---

[4] Mr. Salam's compliance with his conditions of pretrial release has been flawless.